## LANE v. PARK et al.

(Circuit Court, W. D. Pennsylvania. February 11, 1892.)

1. PATENTS FOR INVENTIONS—INFRINGEMENT—PLOWS.
   The claim of the patent in suit was for "the improvement herein described in the manufacture of plows and cultivators; that is to say, the making of them of metal plates, having a center layer of soft iron or steel, with exterior layers of cast-steel; substantially as and for the purposes described." Soft center steel plates themselves were old. The defendants, steel manufacturers, made the plates, and, upon orders, cut them into blanks of suitable size and shape for plow mould-boards and cultivator teeth, and sent the rough blanks to the persons ordering them, who were manufacturers of plows and cultivators. *Held,* that the defendants did not infringe.

2. SAME.
   The defendants were not bound to inquire whether or not the purchasers from them were licensed by the plaintiff to use the invention, and, having done no wrong themselves, they were not answerable for the unlawful acts of others.

At Law. Action by John Lane against Sarah Park and others for infringement of a patent. Judgment for defendants:

### FINDINGS OF FACT.

In pursuance of written stipulation, this case was tried by the court without the intervention of a jury. The following facts, therefore, are found by the court:

(1) On September 15, 1868, letters patent of the United States No. 82,130 were granted to the plaintiff, John Lane, for an improvement in the manufacture of plows and cultivators; the invention consisting, the specification declares, "in constructing the mould-boards and shares of metal plates, having a center layer of iron, with a layer on both exterior surfaces of cast-steel." After stating the advantages of the invention, and the method of manufacturing the compound plates, the specification closes with the following disclaimer and claim:

"Since perfecting my invention, I have learned that compound bars of iron and cast-steel, constructed in a similar manner, were described as having been invented in England for the manufacture of edge tools, and therefore I do not claim the bars themselves as my invention; but, having thus fully described my invention, what I do claim is the improvement herein described in the manufacture of plows and cultivators; that is to say, the making of them of metal plates, having a central layer of soft iron or steel, with exterior layers of cast-steel, substantially as and for the purposes described."

The letters patent are made part of this finding.

(2) On December 17, 1866, Lane filed in the patent-office an application for letters patent for an "improvement in plates used in the manufacture of plows," the described method of manufacturing the same consisting in welding two layers of soft semi-steel on a central layer of tough, fibrous iron, heating the plate thus formed, and then casting on both sides of it highly carbonized molten steel, and rolling down the ingot to the proper thickness. The claim was this:

"As a new article of manufacture, plates for manufacturing plows, composed of layers of metal of the several qualities herein specified, arranged substantially as and for the purposes described and set forth."

The application was rejected, and after amendments was again rejected, and on August 27, 1867, was withdrawn. On April 11, 1867, Lane filed an application for "an improvement in cast-steel plows," the invention consisting—

"In making the mould-boards of cast-steel plows of layers of metal of different qualities, the face or wearing surface being composed of highly carbonized cast-steel, while there is secured thereto or combined therewith, in any suitable manner, a layer or layers of iron or soft wrought steel, forming a center lining or back, which serves to toughen and strengthen the mould-boards."

The original claim of this application was:

"A plow, when the mould-board thereof is composed of cast-steel, combined in any suitable manner with a toughening layer or layers, substantially as specified, and for the purposes set forth."

This application was rejected upon references, and after repeated amendments was still rejected. In the course of the proceedings the applicant addressed a communication to the commissioner of patents, in which he stated:

"Finally, I would add my claim is for a mould-board made of steel, with iron center. I do not claim the method of making this steel, though described in the specification. It is the result only—the mould-board—that I claim; and, if necessary, I would disclaim expressly everything except that."

In another communication to the commissioner the applicant said:

"I do not claim the ingot; that is not my invention; but I do claim the final product,—the mould-board; that is my invention."

The final claim was this:

"I claim as new articles of manufacture, mould-boards for plows, when made in laminated plates, having a steel face and back, and a central toughening layer, substantially as specified."

This application was finally rejected March 23, 1868. On September 26, 1867, Lane filed a third application, being the one under which the patent in suit, No. 82,130, was granted. Originally this application was for "an improvement in the manufacture of cultivator teeth," and the material, use, and mode of manufacture were thus described:

"I take a plate of the proper thickness, and composed of a layer of cast-steel on one side and a layer of soft steel or wrought iron on the other, or of two layers of cast-steel, with the layer of soft steel or wrought iron between them, and cut it into blanks of the proper size to make the teeth, and then from these blanks I form the teeth by swaging, or in any other convenient way, and finally harden the cast-steel, if desired, in the usual manner."

The first original claim was this:

"The above-described blank for making cultivator teeth, composed of a layer or layers of cast-steel, combined with a layer or layers of wrought iron, soft steel, or other suitable toughening material."

This application having been rejected, Lane, on April 9, 1868, addressed to his attorney a letter, which was filed in the patent-office in the case, and in which he said:

"I am aware that to make plates of compound quality is not new, but I believe law will allow me the claims in some shape that will be good for a tooth of cast-steel face and back, combined with a tough layer throughout the center, hardened; the face and back being very hard, while the tough layer is soft, or softer than face and back. * * * Drop all claim to the unsharpened blank, and confine to the finished tooth; also confine, if you think best, to hardened tooth. I think best."

Lane's attorney then, on May 26, 1868, canceled the original specification and claims, and substituted the specification and claim of the patent in suit, the petition for the allowance of this change, stating that the new application was "intended to be a substitute for both the previously filed applications; that on the plows being withdrawn for the purpose of having it embodied in this case." Eventually the patent in suit was granted September 15, 1868. Exhibits A, B, and C, being copies of the file-wrappers and contents in the three above-recited applications, are made part of this finding.

(3) The manufacture by the method set forth in Lane's patent of compound or soft center steel, having a central layer of iron, with an outer layer, on each face, of cast-steel, was made known and fully described in English letters patent No. 2,033, *prout*, dated January 19, 1795, granted to Arnold Wilde, for the invention of "making and manufacturing of all sorts of plane irons, scythes, sickles, drawing-knives, hay-knives, and all other kinds of edge tools, from a preparation of cast-steel and iron, united and incorporated together by means of fire." And the use in the manufacture of plows of iron-backed steel, or two-ply compound plates, composed of an iron back and steel face, as shown by United States letters patent No. 34,262, dated January 28, 1862, granted to William Morrison, *prout*, and United States letters patent No. 47,753, dated May 16, 1865, granted to Francis F. Smith, *prout*, was old at the date of Lane's invention.

(4) In the manufacture of plows and cultivators, the old and customary method was to cut the rolled metal plates into blanks, or pieces of suitable size and shape, and these pieces were first bent into proper form, and were then tempered or hardened, and finally were ground or polished, and when finished were bolted in place. But, with the metal plates used prior to Lane's invention, the tempering or hardening process was apt to warp the pieces out of proper form.

(5) The object of Lane's invention was the production of plow mould-boards and shares and cultivator teeth, which, after being bent to the required forms, could be tempered or hardened without warping or change of form. To prevent this warping in the tempering or hardening process is the distinctive and valuable feature of Lane's invention. This he accomplishes by the use of soft center or iron center steel, as it is called, or plates formed of an iron or soft semi-steel center layer between two steel faces or outer layers. Lane's invention soon came into very general use.

(6) The plaintiff's established license fee was $5 per ton, and the defendants' books show the exact number of tons of plow and cultivator shapes made and sold by them, as set forth in the next finding.

(7) The defendants at the times and on the occasions mentioned in the declaration, between the grant of the plaintiff's patent and the expiration thereof, were steel manufacturers at Pittsburgh, in the western district of Pennsylvania, and then and there, in the usual course of their business, manufactured and sold metal plates having a center layer of soft iron or steel with exterior layers of cast-steel, for use chiefly in the manufacture of plows and cultivators, safes, and jail-bars; and the defendants, upon the order of the purchasers, cut these plates to pattern for plow mould-boards, plow-shares, land-sides, and cultivator shovels, and also into such shapes and patterns for other purposes, as ordered by the purchasers. The blanks or pieces so cut to shape for plows and cultivators they shipped to their customers, manufacturers of plows and cultivators, in a flat, unbent, unpolished, and unhardened state.

*C. C. Linthicum, S. Whipple Gehr,* and *George W. Acklin,* for plaintiff.
*W. Bakewell & Sons,* for defendants.

ACHESON, Circuit Judge. Waiving the question whether the plaintiff's application of soft center steel, a material confessedly old, to the manufacture of plows and cultivators involved anything more than the exercise of good mechanical judgment, and assuming that his specification disclosed a patentable invention, we proceed at once to the question of infringement. And here we have first to notice that the claim of the patent is so awkwardly expressed as to give rise to controversy whether it is for the method of making plows and cultivators out of the described material, or for the product or manufacture made in the defined manner. The plaintiff takes the latter view, and we adopt it as the better opinion. But what, as new articles of manufacture, does the claim cover? The plaintiff contends that it embraces the flat pieces of metal plate cut to pattern by the steel manufacturer upon the order of the purchaser,—the mere blanks out of which the mould-boards and plow-shares and the cultivator teeth are made by the person ordering the material. But assuredly these blanks are not in terms within the claim, which, as we have seen, is in these words:

"The improvement herein described in the manufacture of plows and cultivators; that is to say, the making of them of metal plates, having a central layer of soft iron or steel, with exterior layers of cast-steel, substantially as and for the purposes described."

According to the letter of the claim, the pronoun "them" plainly relates to the "plows and cultivators" previously mentioned. But, if we look beyond the claim itself, into the specification, we find nothing therein to countenance the broad construction upon which the plaintiff insists. The method of cutting the steel plates in prior use into pieces of proper size and form to make the mould-boards, plow-shares, and cultivator teeth is described as old, as is also the after-treatment of these pieces, namely, the shaping, tempering, grinding, and polishing thereof. It is shown that the difficulty sought to be overcome did not arise until after the blank pieces had been bent and formed into mould-boards, plow-shares, and cultivator teeth; that it is in the still later process of

tempering or hardening these formed parts that the difficulty existed. To prevent these completely formed parts from warping during the process of tempering or hardening is the very essence of the described invention. The specification declares that "the invention consists in constructing the mould-boards and shares of metal plates, having a central layer of iron," etc. And again: "By having the steel on both sides of the iron, the mould-boards and shares, after being bent to the required form, can be tempered without warping or changing their form." By no allowable reading of the specification can the invention be held to exist in the bare metal blanks cut from the admittedly old soft center steel plates. Again, we have seen that in his second application, which became merged in his third one, the plaintiff addressed the commissioner of patents thus: "My claim is for a mould-board made of steel, with iron center. I do not claim the method of making the steel. * * * It is the result only—the mould-board—I claim; and, if necessary, I would disclaim expressly everything except that." Then he intentionally and very deliberately canceled and abandoned his claim for the blanks for making cultivator teeth. The restricted claim, as finally formulated by the plaintiff and allowed by the office, after repeated rejections of broader claims, is strictly binding upon the plaintiff, and he is precluded from insisting upon a construction which would so broaden the claim as to take in the mere flat metal blanks in their rough state. *Sargent* v. *Lock Co.*, 114 U. S. 63, 5 Sup. Ct. Rep. 1021; *Shepard* v. *Carrigan*, 116 U. S. 593, 6 Sup. Ct. Rep. 493.

But the plaintiff further contends that, if the patented invention was not embodied in the metal blanks, so as to constitute a direct infringement of the claim of the patent, still the defendants are liable, by reason of their contributory act in cutting the blanks, as joint infringers with the manufacturers, who used them in making plows and cultivators; and to sustain this position *Wallace* v. *Holmes*, 5 Fish. Pat. Cas. 37, is cited. But between that case and the one in hand there is no real analogy. In *Wallace* v. *Holmes* the defendants made and sold the completed burner, which contained the distinguishing feature of the invention, and which was entirely useless without the lamp chimney; so that, as the court said, every sale of a finished burner was a proposal to the purchaser to supply the chimney, and every purchase was a consent that this should be done. Moreover, the acts of the defendants there were clearly indicative of the intention to infringe, and actual concert with others to do so was a certain inference from the proofs. The case here is rather within the principle of the case of *Keystone Bridge Co.* v. *Phœnix Iron Co.*, 5 Fish. Pat. Cas. 468, where, the patent being limited to the use of the described chords in bridge structures, it was held by Judge McKennan that the defendants might lawfully make the chords, and were not responsible for the infringing act of the bridge builders in using them. Now, indisputably the right to manufacture soft center steel plates was open to everybody, and the mere cutting them, according to order, into convenient patterns or shapes, to suit the purposes of the plow-maker or manufacturer of the cultivators, was no encroach-

ment upon the exclusive rights of the plaintiff. The defendants were not bound to inquire whether or not the purchasers from them were licensed by the plaintiff to use the invention; and, having done no wrong themselves, they are not answerable for the unlawful acts of others.

In the facts of this case we discover no ground whatever for imputing infringement to the defendants. And now, February 11, 1892, upon the facts found, the court finds in favor of the defendants.