WALDER v. ULRICH.

(Circuit Court, D. New Jersey. October 27, 1897.)

PATENTS—ANTICIPATION—LOOM FOR MAKING FRENCH HARNESS.
The Urbahn patent, No. 289,872, for an improved loom for making French harness, is void, because of anticipation.

This was a suit in equity by Jacob Walder against Franz Ulrich for alleged infringement of a patent for an improved loom for making French harness.

A. v. Briesen, for complainant.
A. G. N. Vermilya, for defendant.

KIRKPATRICK, District Judge. This is a bill in equity, filed to obtain an injunction restraining the infringement of letters patent No. 289,872, granted December 11, 1883, to A. Urbahn, and by him assigned to Jacob Walder, the complainant, for an improved loom for making French harness. French harness has been long known and most extensively used in the art of weaving. It consists of a large number of heddles, each of which is composed of two interlooping threads, looped alternately equidistant above and below the plane of the center of the harness. A reference to Fig. 11 of the drawings of the patent shows a double thread suspended from the upper part of the heddle frame, through which a similar doubled thread that connects with the lower part of the heddle frame passes, the two doubled threads so interlocking and holding one another taut and secure. Every warp thread of the loom in which said harness is to be em-

ployed is first passed through the loop of one of these double-headed·
threads, where the point of interlocking is above the center line, and
then through the loop of another, where the interlocking is below the
center line; being thereby prevented, beyond certain limited play,
from moving up or down, except as the two heddles which are raised
or lowered simultaneously are moved.   The necessity of bringing the
supporting loops of the warp threads into exact alignment rendered
the making of French harness by hand exceedingly difficult, and, from
the requirement that each doubled thread be tied over and around the
heddle frame or to a rig band of tape, there arose a liability to an
irregularity in the plane of the loops and a variable tension on the
heddle frames.   The complainant's claim of invention relates to
looms for making the kind of harness above described, and it consists
more particularly in the combination of two shuttles traveling in cir-
cular interlocking tracks, with certain reciprocating pins; the shut-
tles being arranged to lay their respective threads around said pins,
and thereby interlock the threads.   "For example, one shuttle
carries the thread, a, and the other the thread, b.   The thread, b,
will be carried through the track described by the shuttle laying the
thread, a, and thus the two threads will be caused to interlock."

To accomplish satisfactory results, a machine for making French
harness must be able to interloop the threads alternately above and
below the center line of the heddle, to give them equal tension, and
provide the means for uniting the threads firmly and uniformly at
the ends.   It was desirable that the heddles, instead of being fast-
ened independently of each other to the heddle frame, should be
woven into a selvage, which should take the place of the heddle
frames.   For this purpose, the complainant's machine provided warp
threads extended along both sides, shuttles to carry the heddle
threads and lay them around the reciprocating pins in the center, and
which on their way back and forth should pass between the side warp
threads in such manner as, when beaten up by two reeds on opposite
sides moving together, they would be fastened so as to incorporate
them into the fabric which has been called the "selvage."   In laying
their threads around the pins, the shuttles travel in eccentric tracks,
and the amount of thread paid out by each is regulated by a light
spring pressing against the bobbin, which is that part of the shuttle
on which the thread is wound.   The patentee states that "the main
feature of my invention in my estimation, so far as I am acquainted
with looms, is the use of the two shuttles traveling in interlocking
paths, in combination with the inner abutting or loop-forming pins or
needles, $a^2$ and $b^2$.   How the motion of these parts is obtained
seems immaterial."

Fig: 5

Fig. 2

˙ The claims of the patent which are said to be infringed are as follows:

Claim 1: "The combination of the two shuttles, H and I, and mechanism, substantially as described, for moving them on tracks that cross each other in the same plane, with the pins or needles, $a^2$ and $b^2$, and mechanism, substantially as described, for moving said pins, and for moving the warp threads around which said shuttles are carried, substantially as herein shown and described."

Claim 2: "The shuttles, H and I, combined with mechanism, substantially as described, for moving them on tracks that cross each other in the same plane, in combination with the pins or needles, $a^2$ and $b^2$, and mechanism, substantially as described, for moving said pins or needles, mechanism for moving the warp threads, $j^2$, substantially as described, stretchers, N, N, and reeds, $S^2$, and means for operating the same substantially as specified."

The elements which are in combination in claim 1 are these: The two shuttles, H and I; the mechanism for moving them on the tracks that cross each other in the same plane; the pins or needles; mechanism for moving said pins; mechanism for moving the warp threads around which said shuttles are carried. The function of these several elements I find from the specification of the patent to be as follows: That of the shuttles to carry the bobbins from which the thread forming the heddles is unwound; that of the mechanism for the motion of the shuttles to move them on the tracks that cross each other in the same plane. The function of the pins is to form an abutment around which the thread carried by each shuttle is laid, and the mechanism for moving the pins is to cause them alternately to project in and be removed out of the path of the threads carried by the shuttles, H and I. A reference to the file wrapper shows that the original application for this patent was rejected at the patent office, because some of the claims were anticipated by the French patents issued to Tournier, No. 26,457, dated August 22, 1860, and No. 109,335, issued August 30, 1875, and another claim anticipated by United States patent No. 145,056, dated December 2, 1873; the patents issued to Tournier were for "improvements in the manufacture of heddles for weaving by means of looms modified for that purpose." Amendments were made upon the demand of the patent office. Claim 1, as originally filed, was amended so as to read as follows: "The two shuttles, H and I, combined with each other, with mechanism substantially as described for revolving them in tracks that cross each other in the same plane, and with means substantially as described for supporting and moving two sets of warp threads substantially as specified,"—and finally rejected; and claim 2a, for the combination of the shuttles, H and I, with mechanism substantially as described for moving them on tracks that cross each other with the pins or needles, $a^2$ and $b^2$, and with mechanism substantially as described for moving said pins or needles, was erased. The other claims were changed in form, and made more limited, so as to meet the requirements of the patent office, and avoid infringements upon machines of which the office had knowledge. It also appears that the separate claim for the combination of two shuttles traveling in circular interlocking tracks was abandoned. Among the erased claims we find the shuttles, H and I, combined with each other, mechanism for moving them on tracks that cross each other, the pins or needles and the mechanism for alternately producing them to form

the abutment around which the shuttles laid their thread. By the erasure of his claims to these combinations, the patentee has admitted that they were not his invention, and he cannot now claim them as his own. Lane v. Park, 49 Fed. 454; Railroad Co. v. Kearney, 15 Sup. Ct. 871; Knapp v. Morss, 150 U. S. 221, 14 Sup. Ct. 81. Hence it appears that all of the elements of claim 1 of the patent were old. Shuttles H and I, with suitable mechanism for moving them on tracks that crossed each other, had been combined with two sets of warp threads, and also with pins or needles and mechanism for moving them. The only additional requirement made by claim 1 of the patent is that the shuttles shall be moved on tracks that cross each other in the same plane.

There has been much difference of opinion expressed by the experts in the case, and discussion in briefs of counsel, in regard to the true meaning and interpretation of the phrase "in the same plane," as used in this connection. After a careful reading of the patent and specifications, and the testimony of the witnesses, as disclosed in the record, I am unable to come to any other conclusion than that it refers to the plane in which the shuttles are when their tracks cross each other. The record in this case discloses the prior existence, not only of two French devices for manufacturing harness of the kind made by the complainant's patented machine, but also another machine made by Urbahn for the complainant, Walder, in 1879, a working model of which has been produced, and called the "Urbahn 1881 Model." This machine was intended for the manufacture of French harness. Under the agreement for its construction, Walder was to pay for all work and material necessary to build the machine; Urbahn was to furnish the design and give his superintendence. If the machine turned out to the satisfaction of Walder, he agreed to pay Urbahn $500 for the same. When the machine was completed and in working order, Walder not only paid the agreed price of $500, but added $10 extra, "to show his entire satisfaction" with it. This machine was not patented, but remained in use in Walder's shop for two or more years; and Walder had another machine made after its pattern, and Walder says he showed it with pride. That it was a complete operating machine is not denied. That harness that was made on it was sold and used. Walder and Urbahn now say that complaints were made of the defective character of the harness, but no witness is produced who had bought the harness and says that he was not able to use it, while Eckerman swears that the harness turned out was as good as that made on the patented machine.

Upon an examination of the model of this anticipating machine, it will be found that it has in combination the two shuttles, H and I, in no way differing from those in the patented machine; that it has pins like those of the patent, and mechanism for moving them in substantially the same way. The shuttles are moved by mechanism on circular tracks, in the same plane, in such a way that the threads will be laid around the pins so as to interlock. It also has mechanism for moving the warp threads substantially as shown in the patent. The difference between the "1881 Model" and the patented machine is stated by the complainant's expert to be this:

83 F.—31

"The one distinctive difference between the first Urbahn machine and the machine of the patent in suit is that in the early machine the shuttles did not move in interlocking tracks or paths, but moved in the one identical track or path."

In this opinion the defendant's expert is found to be in accord. He says:

"The first Urbahn machine differed from the machine of the patent in suit in the arrangement of the tracks or races in which the shuttles move, and in the mechanism by which they are caused to move; * * * the rest of the mechanism being in all substantial respects * * * identical with the machine of the patent in suit."

In both machines the shuttles moved in the same plane. To form the heddle in the old machine as well as the machine of the patent, it was necessary that the threads should be interlooped, and this could only be effected by the shuttles crossing each other's tracks or paths. Both the mechanisms of the old machine and the machine of the patent accomplish the same result, substantially the same way. The old "1881 Model" carries the weft or heddle threads through the warp on the sides, to and around the pins interlooping the threads as they go, and then brings them back to their own warp, and carries them through again. The patented machine does no more.

It is insisted on the part of the complainant that the produce of the 1881 model was an unsalable fabric, and that this was due to the faulty construction of the machine in the use of the single track on which the shuttles moved. Both of these propositions are denied by the defendant; but, if they be granted, I am of the opinion that with the knowledge of the mechanism of the 1881 model, which was free to the world, it required no more than mechanical skill to make the changes which would result in the patented machine in suit. All the elements of the patented machine were in combination in the 1881 model, and it did not require invention to substitute two shuttles moved on tracks that cross each other in the same plane, for the purpose of interlooping the threads which they carry, for two similar shuttles moving in the same plane on one track, in such manner as that the threads which they carry shall, by the crossing of each other's tracks, be similarly interlooped. Having come to the conclusion that the "Urbahn 1881 model" machine, which was free, was in anticipation of the one described in the complainant's patent, and contained in combination all the elements of complainant's claims, it is needless to consider what relation the Huber machine or the French machines bear to the patented machine in suit. For the reasons given, the bill must be dismissed.