IMPERIAL MACH. CO. v. REES et al.

SAME v. METROPOLITAN LIFE INS. CO.

(District Court, S. D. New York. November 6, 1919.)

PATENTS ⬅328—FOR VEGETABLE PEELING MACHINE VALID AND INFRINGED.

The Robinson patent, No. 809,532, for a vegetable peeling machine, *held* valid and to cover a highly meritorious invention; also *held* infringed by a machine in which the abrading disk, while not "striated" within the terms of the claims, is made equivalent in function and operation by substituting an abrading surface of carborundum.

In Equity. Suits by the Imperial Machine Company against Frederick Rees and Frederick Stindt, copartners, and others, and against the Metropolitan Life Insurance Company, for infringement of the Robinson patent, No. 809,582, for a vegetable peeling machine, granted January 9, 1906. On final hearing. Decree for complainant.

A. Alexander Thomas, of New York City, for plaintiff.
James H. Griffin, of New York City, for defendants.

MAYER, District Judge. These cases have been tried together, and defendants do not contest the validity of the patent, but con-

tend that, if the claims are construed in accordance with their language and in view of the prior art, they are not infringed.

The invention is highly meritorious in a modest art, and the patentee has struggled with many litigations over a long period of years to retain the fruits of his efforts. The following is a list of the cases in which decisions have been had: Judge Hough held claim 1 valid and infringed in Imperial Machine Co. v. Smith & McNeil, after trial and argument in February, 1914. Judge Hough's opinion is not reported. Judge Lacombe granted a preliminary injunction on claim 1 in Imperial Machine Co. v. Jacobus (D. C.) 212 Fed. 958. Judge Hazel granted a preliminary injunction on claim 1 in Imperial Machine Co. v. Streeter & Co. (D. C.) 214 Fed. 985. Judge Learned Hand granted a preliminary injunction on claims 1, 2, 3, and 4 in each of the two cases here in controversy and in a third case (Whyte's Case) argued at the same time. The opinion of Judge Hand is not reported. Judge Mack, in Imperial Machine & Foundry Corporation v. Blakeslee, pending in this district, on a motion for a preliminary injunction, held claims 1, 2, 3, and 4 valid and infringed (September, 1919). Judge Learned Hand granted a preliminary injunction in July, 1917, in Imperial Machine Co. v. Reilly. Judge Tuttle, in the Eastern district of Michigan, in Imperial Machine Co. v. Reinhold Mfg. Co., granted an order for a temporary injunction in July, 1919. Judge McPherson, in Robinson Machine Co. v. American Fruit Machinery Co., held claims 1, 2, and 3 valid and infringed. 212 Fed. 959. 960. This decision, however, was reversed on the interpretation of the word "flat" in the claims, 191 Fed. 723, 112 C. C. A. 313. In these various cases nearly all of the prior art was either discussed or considered.

The point made by the defendants revolves around the word "striated"; it being urged that, because portions of defendants' disks are not "striated," therefore defendants do not infringe. The issue is thus clearly and simply presented, and it would be enough to rest upon the opinion of Judge Learned Hand, were it not for the fact that the plaintiff, after his years of struggle in litigation, is entitled to have another affirmative decision, which, if upheld, may permit him to enjoy the benefits of his invention for the remaining years of the patent.

In his specification the patentee states:

"This machine has relation to improvements in that type of machines for peeling vegetables wherein an abrading disk rotates at the bottom of a containing vessel provided with an abrading lining. Machines of this type have been hitherto designed according to two principal plans. In following one plan of construction inelastic sharp cutting edges are provided for acting upon the material to be treated, and the turning of individual vegetables is accomplished by special devices introduced in the path of movement of the mass. The second plan of construction involves the use of brushes as abrading agents, and the turning of the vegetables to bring all parts successively against the active surfaces is supposed to be accomplished by the elasticity of the wires or bristles in such brushes. In this form a free path of movement is left for the mass to be treated.

"While the present invention involves certain improvements capable of advantageous use with any class of active surfaces or abraders, the invention

furthermore comprises improvements in the abraders themselves, whereby the advantages of both of the above classes of construction are united, while avoiding the disadvantages inseparable from each of the older plans.

"Among the advantages incident to this invention aside from the nature of the specific abraders used may be mentioned the following: The entire device can be easily opened for inspection and cleaning. The abraders are divided into sectional elements which are so arranged as to be easily removed and replaced when worn out, and this whether brushes or other abraders are used. The two normally separable parts of the machines are so joined that no water can escape, and this without the use of gaskets or other perishable devices. The top of the containing vessel is left entirely open and unobstructed, so that the machine may be charged without any impediment whatever. The impelling rotary disk at the bottom of the containing vessel is removable in sections without the use of tools, so as to expose the parts wherein the waste may accumulate, thus facilitating sanitary and convenient operation at all times."

The four claims in suit are as follows:

"1. In a device of the class described, an impelling and abrading member comprising a rotary disk composed of a horizontal flat striated portion and a raised portion, extending from near the circumference inward and having two sides sloping down to the flat striated portion of said disk, substantially as described.

"2. In a device of the class described, an impelling and abrading member comprising a rotary disk composed of a number of horizontal flat striated portions separated by raised portions at intervals extending from near the circumference inward, substantially as described.

"3. In a device of the class described, an impelling and abrading member comprising a rotary disk composed of a horizontal flat striated portion and a rounded raised portion rising gradually from near the center toward the circumference, substantially as described.

"4. In a device of the class described, an impelling and abrading member comprising a rotary disk composed of a horizontal flat striated portion, and a rounded raised portion bounded by two approximately radial edges extending from near the circumference inward and having a striated surface, substantially as described."

The history of the art shows that Robinson's is a pioneer patent, which first disclosed a practical successful machine for peeling a deep mass of vegetables at the same time. This machine has been extensively used by hotels and restaurants and by the United States Navy, with the result that the peeling, especially of potatoes in large quantities, has been quickly, cleanly, and efficiently done.

Robinson described in his testimony the problem which he sought to solve, and told briefly and convincingly how he finally hit upon the basic idea of the invention. The fundamental feature of the invention resides in an abrading disk having rounded lumps or raised portions to produce the necessary agitation and circulation of the vegetables, without which a machine of this character is not practical. Robinson's original disk had a roughened or striated surface. Later, in practice, he adopted carborundum, which, of course, has a granular or granulated surface. Defendants' devices copy the basic feature of the invention, and if the word "striated" in the claims is to be literally followed, then the departure is only in substituting an abrading surface such as carborundum or concrete for a striated or channeled surface. But such a substitution amounts only to the use of an equivalent in a case where such an equivalent is fully permissible. This is

so well and carefully stated by Judge Learned Hand that I shall adopt his language and quote it:

"Taken verbally the language of the first four claims of patent No. 809,582 are certainly not infringed, if for no other reason, at least because there are no striæ upon the surface of the abrading member. That word keeps substantially the same meaning as it had in Latin; it is a furrow or groove, and none of the supposed infringing devices have grooves, for the surface is covered with carborundum dust, which apparently Benziger was the first to invent. Nor, indeed, can we suppose that by striæ the patentee supposed he was dealing with anything else, because not only on page 3, lines 73–76, does he give the ultimate scope of his claims, which include 'any fine ridges presenting rubbing edges,' but in patent 942,932 he contrasts these striæ or 'abrading ribs' with a 'broken unstriated abrading surface' (page 2, line 51). It should therefore be conceded that the patent did not use words which can be held literally to cover the carborundum surface later discovered.

"Yet this does not necessarily conclude the patentee under the doctrine of equivalents, if the same means accomplished the same result. Now, it is clear that the same result is accomplished by a carborundum plate as by a striated; the potatoes are peeled by the abrasion of a moving roughened disk. Furthermore, the same means are used—not literally the same I own, but substantially. If, for example, there had been two sets of striæ at right angles, or if the striæ had been serrated, it could scarcely be urged that the patent was successfully avoided, yet the resultant surface would be only a series of points set in uniform geometric relation. Does it make a difference that the points are irregularly set by the chance deposit of particles of carborundum? It seems to me not. The actual operation is this: The curved surface of the potato touches the abrading rib over only a minute line, whose length depends upon the amount that the rib penetrates the skin of the potato. That is, of course, literally different from the penetration of a point; but the doctrine of equivalents presupposes some differences and looks at the infringement only for functional variations. The variations arising from an improvement in the art do not materially change the operation of the means, and the infringement seems to me, though an improvement, to fall within the fundamental patent.

"I conclude, therefore, that as to Campion's peeler and the Metropolitan Life Insurance Company's infringement is established, and I am not embarrassed in that conclusion by the decision of the Circuit Court of Appeals for the Third Circuit. American Fruit Machinery Co. v. Robinson Machine Co., 191 Fed. R. 723 [112 C. C. A. 313]."

Judge Learned Hand, in the same opinion, in considering Whyte's device in reference to another feature, shows the esteem in which he held the patent by stating:

"I cannot bring myself to destroy the whole value of what appears to have been a most valuable device by sanctioning so trivial an evasion of the obvious meaning of the claims."

Buist and the other slight additions to the prior art introduced in this case are of such little consequence that they do not call for discussion. It was shown on the trial that these devices would prove of no practical value, and they do not disclose anything which would have helped Robinson in his experiments looking toward a solution of the problem.

The patent is held valid, and the four claims are held infringed.