## INDIVIDUAL DRINKING CUP CO. v. ERRETT.

(Circuit Court of Appeals, Second Circuit. March 3, 1924.)

No. 229.

1. **Patents ☞259—Sale of paper cups to owner of infringing cup-vending machine held not to render vendor guilty of contributory infringement.**

   A sale by manufacturer of paper cups, an article in commerce of ordinary use, and which can be used without relation to any apparatus, to owner of an infringing cup-vending machine, using any paper cups of proper size, does not make manufacturer guilty of contributory infringement, and he is under no duty to ascertain whether the cups were adapted for use in the infringing apparatus.

2. **Patents ☞259—Defendant must knowingly commit act without which infringement would not have occurred, to be guilty of contributory infringement.**

   Before one may be held for contributory infringement, he must knowingly commit some act without which the infringement would not have occurred.

3. **Patents ☞259—Inducing another to use infringing machine rendered defendant guilty of contributory infringement.**

   Where defendant, to obtain a customer for his own product, induced another to use an infringing vending machine, he was guilty of contributory infringement, though his acts were due in part to conscientious advice by counsel, who was of opinion that the patent covering the machine was invalid.

4. **Judgments ☞564(2)—Interlocutory decree held not res judicata.**

   An interlocutory decree cannot be res judicata between the same parties in respect to the same litigation, and still leave all questions open until the final decree.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Individual Drinking Cup Company against Charles Errett, doing business as the Lily Cup Company. From a decree favorable to plaintiff, defendant appeals. Motion to dismiss appeal denied, and decree modified, as indicated.

Appeal from a final decree dated January 28, 1920, holding valid certain claims of the Luellen patent, 1,081,508, dated December 1, 1913, for a machine adapted to dispensing paper drinking cups, and holding defendant as a contributory infringer of six out of seven of the valid claims of this patent, which is spoken of in the litigation as the "apparatus patent." The history of the litigation follows:

The first suit was begun in the District Court for the Eastern District of New York, and the decision of the District Judge will be found in Individual Drinking Cup Co. v. Public Service Cup Co., 226 Fed. 465. See, also, 234 Fed. 653, and 237 Fed. 400. In that case, Judge Chatfield held 36 claims of the Luellen patent supra, valid and infringed. The Luellen patent, 1,032,-557, for a paper cup to be used in connection with a coin-controlled apparatus for dispensing beverages or similar purpose, was held valid, but not infringed by defendant Public Service Cup Company, which was the manufacturer of a cup known as the Lily cup.

Following the decision in the Eastern district, plaintiff began suits against some of the customers of Public Service Cup Company—i. e., Union News Company, Hudson River Day Line, and Charles Errett—and in each of these suits declared upon the apparatus patent, but not upon the cup patent. The first of these suits was that against Union News Company. When the case was reached for trial, plaintiff filed a petition for leave to dismiss the bill

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

without prejudice. This motion was denied, and, as plaintiff did not proceed with the trial, the bill was dismissed in April, 1916, and the decree of dismissal was affirmed on appeal, 250 Fed. 625, 162 C. C. A. 641.

In October, 1916, the suits against Errett and Hudson River Day Line were tried together before Judge Learned Hand, and resulted in a decree that the Hudson River Day Line apparatus infringed two claims of plaintiff's apparatus patent, and that an apparatus of defendant, known in the litigation as the "free dispenser," did not infringe. In the Errett Case, the District Court, relying on Henry v. Dick, 224 U. S. 1, 32 Sup. Ct. 364, 56 L. Ed. 645, held that Errett's sales of cups to owners of infringing machines constituted contributory infringement.

In view, particularly, of the difference in the holdings of the two judges, the contending parties sought a decision from the Circuit Court of Appeals, and thus the three cases came up on appeal and were argued together. The decision of this court is found in Individual Drinking Cup Co. v. Public Service Cup Co., 250 Fed. 620, 162 C. C. A. 636, and from this it appears that the patent relating to the paper cup was held void, while certain claims of the patent, No. 1,081,508, for a dispensing apparatus for paper cups, were held valid and infringed by a certain vending machine, but not infringed by the "free dispenser," and one claim was held valid, but not infringed by the vending machine.

The defendants in the Southern district cases, Errett and Hudson River Day Line, did not appeal, but the defendants in the Brooklyn suit appealed from that part of the decree affecting the apparatus patent. The reason for this course is fully stated in 250 Fed. at page 621, 162 C. C. A. 636. It will be noted that the decree in the Errett Case was an interlocutory decree, and an examination of the briefs submitted upon the appeal, as well as the petition for rehearing and the briefs on rehearing, discloses that the question of contributory infringement was not discussed. The mandate of this court provided, inter alia: "That the decree of said District Court be and it hereby is modified in accordance with the opinion of this court, and, as so modified, is affirmed, without costs."

The District Court for the Southern District of New York entered its order on and in pursuance of the mandate and made an order of reference to a master. The master found that no profits were made by defendant and no damages suffered by plaintiff, and thereafter the District Court for the Southern District of New York filed its decree, dated January 28, 1920, confirming the report of the master, with the result that the recovery of plaintiff was confined to the amount of the master's fee and the costs of the reference.

From this final decree defendant Errett has appealed, and as the extent and phraseology of the decree present the important questions involved we quote its essential features:

"Ordered, adjudged, and decreed that the plaintiff * * * is the owner of United States letters patent No. 1,081.505; * * * that claims 16, 18, 26, 34, 41, 48, and 49 of said letters patent are good and valid in law, and that the defendant has infringed upon claims 18, 26, 34, 41, 48, and 49 by contributing to the use of cup-vending apparatus embodying the improvements described in said claims and like or similar to the cup-vending apparatus in evidence, * * * and particularly by selling or offering for sale to persons owning or having such apparatus in their possession, and with the intent that they shall be used therein, paper cups adapted and intended for use in said apparatus. * * * It is further ordered, adjudged, and decreed that the injunction * * * be and the same is hereby made permanent, until the expiration of the patent in suit, to the extent of enjoining and restraining the defendant * * * from directly or indirectly making or causing to be made or constructed, using or causing to be used, selling or causing to be sold in any manner, any apparatus or parts thereof containing or embodying the invention and improvements described and claimed in claims 18, 26, 34, 41, 48, and 49 of United States letters patent No. 1,081,508, * * * and from assisting in or contributing to or inducing others to use the apparatus in any way whatsoever and from selling or offering for sale to persons or parties owning or possessing said infringing apparatus paper cups adapted for use in said apparatus, under such circumstances as would lead a

reasonable person to suppose that the purchasers meant to use said cups in said apparatus, and from counterfeiting or imitating the said invention and improvements, or any part or parts in any way. * * *"

Hans V. Briesen and Fred A. Klein, both of New York City, for appellant.

C. A. L. Massie and Clifford E. Dunn, both of New York City, for appellee.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). [1] The decree brings up for consideration two principal questions: (1) Whether on the evidence in this particular case defendant, Errett was guilty of contributory infringement; and (2) whether he would be chargeable with contributory infringement, if he did other acts prohibited and restrained by the decree. The second question will be first considered.

The fundamental facts are that defendant's Lily cup is an article in commerce of ordinary use, being a paper cup for drinking purposes which can be used without any relation to any apparatus, or which can be used in an unpatented apparatus such as the so-called "free dispensers." It is also plain that defendant's Lily cup is not essential to the use of plaintiff's apparatus, the so-called vending machine, and that that machine may be used in connection with other paper cups.

The doctrine of contributory infringement must be viewed in two aspects: (1) That of basic principle; and (2) that of the history and meaning of the cases. The broad principle is stated by Judge Taft in Thomson-Houston Electric Co. v. Ohio Brass Co., 80 Fed. 712, 721, 26 C. C. A. 107, 116:

"An infringement of a patent is a tort analogous to trespass or trespass on the case. From the earliest times, all who take part in a trespass, either by actual participation therein or by aiding and abetting it, have been held to be jointly and severally liable for the injury inflicted. There must be some concert of action between him who does the injury and him who is charged with aiding and abetting, before the latter can be held liable. When that is present, however, the joint liability of both the principal and the accomplice has been invariably enforced."

1. Like all statements of principle, the difficulty lies in its application. This is peculiarly true in respect of patent infringement, because of the varying character of patents, exemplified, to illustrate, by two broad classes; i. e., combination patents and those which are not combination patents. Subdividing combination patents, we find those where the structure or device requires the making of some particular form or shape to supply an element of the combination, and those which merely require an ordinary article of commerce. To illustrate: In the former instance, there might be needed a piece of steel of definite length, height and width, curved in a particular manner in order to fit into and make up a part of the structure or device in question, while, in the latter, there might be required merely a strip of steel of usual commercial length, height, and width of no particular form or shape which might be used for one of many purposes.

Another consideration, referred to infra, must be borne in mind. Many of the notable cases on contributory infringement arose in connection with licenses or conditions which attached restrictions to the use of the patented article, and it is important in reading these cases to note, not only the particular facts, but also the points of law discussed and decided, as they affect the validity and extent of restrictive provisions.

Wallace v. Holmes, 9 Blatchf. 65, 29 Fed. Cas. 74, is regarded as an early, perhaps the earliest, leading case on contributory infringement. There the complainants had a patent for an "improvement in lamps," and the distinguishing feature of the invention was the burner, with its chimney rest and other details. The burner alone was useless without a chimney, and a chimney was useless without a burner. Defendants made and sold burners substantially like the patented invention, but, although they used such burners, with chimneys placed therein, to exhibit to customers, they did not make or sell the chimneys. Judge Woodruff said:

"The complainants having a patent for an improved burner in combination with a chimney, the defendants have manufactured and sold extensively the burner, leaving the purchasers to supply the chimney, without which such burner is useless. They have done this for the express purpose of assisting, and making profit by assisting, in a gross infringement of the complainants' patent. They have exhibited their burner furnished with a chimney, using it in their salesroom, to recommend it to customers and prove its superiority, and therefore as a means of inducing the unlawful use of the complainants' invention. And now it is urged that, having made and sold burners only, they are not infringers, even though they have distributed them throughout the country in competition with the complainants', and have to their utmost ability occupied the market, with the certain knowledge that such burners are to be used, as they can only be used, by the addition of a chimney. Manifestly, there is no merit in this defense. * * * If, in actual concert with a third party, with a view to the actual production of the patented improvement in lamps, and the sale and use thereof, they consented to manufacture the burner, and such other party to make the chimney, and in such concert they actually make and sell the burner, and he the chimney, each utterly useless without the other, and each intended to be used, and actually sold to be used, with the other, it cannot be doubtful that they must be deemed to be joint infringers of the complainants' patent. It cannot be that, where a useful machine is patented as a combination of parts, two or more can engage in its construction and sale, and protect themselves by showing that, though united in an effort to produce the same machine and sell it, and bring it into extensive use, each makes and sells one part only, which is useless without the others, and still another person, in precise conformity with the purpose in view, puts them together for use. If it were so, such patents would, indeed, be of little value. In such case all are tort-feasors, engaged in a common purpose to infringe the patent, and actually, by their concerted action, producing that result."

From the foregoing it will be noted that the defendants, who were held as contributory infringers, had (a) manufactured and sold an element of the combination without which the patented device was useless, and (b) had actively engaged in furthering infringement.

In Heaton-Peninsular Button Fastener Co. v. Eureka Specialty Co., 77 Fed. 288, 25 C. C. A. 267, 35 L. R. A. 728 (Button Fastener Case), the court first discussed the restriction upon the use of the machine, and then considered the question of contributory infringement.

At page 296, attention is called to the fact that the bill alleged that there was "no market for fasteners adapted in size and shape for use in complainant's structure, except in connection with those structures" and that "it is then charged that defendants actively induced the users of such machines to infringe. by persuading them that they may use defendants' fasteners with impunity. * * *"

In Thomson-Houston Electric Co. v. Ohio Brass Co., 80 Fed. 712, at page 720, 26 C. C. A. 107, 115, the court said:

"Defendant has not shown, and we infer from the evidence that it cannot be shown, that either the switch or trolley and harp can be used in an electric railway, except in the combinations described and claimed in the two patents here in suit."

In Leeds & Catlin v. Victor Talking Machine Co., 213 U. S. 325, 29 Sup. Ct. 495, 53 L. Ed. 805, it was held that it was infringement to sell record discs specially adapted to the use of a patented talking machine, although such discs were not patented and could lawfully be used in combination with other talking machines. While other questions were involved, it should be observed that the disc was specially adapted and was an element of the combination.

Other cases could be mentioned (many of them referred to in the cases cited supra), where the crucial point is that the contributory infringer manufactured or sold to the infringer, with knowledge of the contemplated infringement, something peculiarly adapted to use in a combination patent.

2. In Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 425, 14 Sup. Ct. 627, 38 L. Ed. 500, however, a different type of case was presented. There paper was sold with the device. The court said at pages 432, 433 (14 Sup. Ct. 630):

"The real question in this case is whether, conceding the combination of the oval roll with the fixture to be a valid combination, the sale of one element of such combination, with the intent that it shall be used with the other element, is an infringement. We are of opinion that it is not. There are doubtless many cases to the effect that the manufacture and sale of a single element of a combination, with intent that it shall be united to the other elements, and so complete the combination, is an infringement. Saxe v. Hammond, Holmes, 456; Wallace v. Holmes, 9 Blatchford, 65; Barnes v. Straus, 9 Blatchford, 553; Schneider v. Pountney, 21 Fed. Rep. 399. But we think these cases have no application to one where the element was made by the alleged infringer is an article of manufacture perishable in its nature, which it is the object of the mechanism to deliver, and which must be renewed periodically, whenever the device is put to use. Of course, if the product itself is the subject of a valid patent, it would be an infringement of that patent to purchase such product of another than the patentee; but, if the product be unpatentable, it is giving to the patentee of the machine the benefit of a patent upon the product, by requiring such product to be bought of him. To repeat an illustration already put: If a log were an element of a patentable mechanism for sawing such log, it would, upon the construction claimed by the plaintiff, require the purchaser of the sawing device to buy his logs of the patentee of the mechanism, or subject himself to a charge of infringement. This exhibits, not only the impossibility of this construction of the patent, but the difficulty of treating the paper as an element of the combination at all."

In Cortelyou v. Charles E. Johnson & Co., 145 Fed. 933, 76 C. C. A. 455 (1906), affirmed 207 U. S. 196, 28 Sup. Ct. 105, 52 L. Ed. 167,

297 F.—47

it was sought to hold defendant for contributory infringement. While the court held that the evidence was insufficient to show defendant had knowledge of certain restrictions contained in licenses, Judge Coxe, speaking for the majority of the court, took occasion to discuss the limits of contributory infringement in an opinion which, in view of Motion Picture Co. v. Universal Film Co., 243 U. S. 502, 37 Sup. Ct. 416, 61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959, seems prophetic. This opinion is so helpful that, at the expense of brevity, we quote from it at length as follows:

"The doctrine originated in a desire to secure to a patentee complete protection in all the rights granted him by the patent, but it was confined to those rights; it went no farther. One who sold an element of a patented combination, which could not be used except in an infringing combination or device, was not permitted to reap the benefits of such sale. He did not himself directly infringe, but he promoted the infringement of others by putting in their hands a device which could only be used in violation of the patent. When confined to articles, whether covered by the patent or not, which are made for the express purpose of inducing infringement and are not intended for any legitimate use, the doctrine of contributory infringement is logical, just and salutary. But we doubt the wisdom of extending it to the ordinary commodities of life, used in connection with a patented machine, because the patentee sells or licenses the machine upon the condition that he alone is to furnish these commodities. Care should be taken that the courts, in their efforts to protect the rights of patentees, do not invade the just rights of others, engaged in legitimate occupations, by creating new monopolies not covered by patents and by placing unwarrantable restrictions upon trade. We think it is clear that the doctrine may be carried far enough to produce such results. For instance, should the patentee of a fountain pen, by such a notice as we have under consideration, be permitted to hold as an infringer one who sells ink to the owner of the pen even though he knows of the restriction? To compel the dealer to make inquiries and take the precautions necessary to save himself from being sued as an infringer would place intolerable burdens upon business. Should the patentee of a motor car, by such proceedings, be able to hold the monopoly on all gasoline used in its propulsion, or the patentee of a stove or a refrigerator have an action of infringement against one who furnishes ice or coal, respectively, to its owner? These may seem to be extreme cases and yet they are not so far beside the mark as may at first appear. It was stated at the bar that among the 'supplies' necessary for the operation of the neostyle were oil and varnish. It is not easy to perceive how a machinist who lubricates the machine and the painter who varnishes it can escape the charge of infringement. If the doctrine be driven to its ultimate conclusion the merchant and the consumer may find themselves enmeshed in a network of monopolies embracing all the necessaries of life. No one may safely sell coffee to the consumer but the patentee of his coffee mill, no one can furnish him flour but the patentee of his baking pans, and he may yet be compelled to buy milk from the patentee of his milk can and soap from the patentee of his bathtub. It is manifest that the doctrine may be expanded ad infinitum. We incline to the opinion that the line should be drawn to include those articles which are either parts of a patented combination or device, or which are produced for the sole purpose of being so used and to exclude the staple articles of commerce.

"For these reasons we think that the complainants should be confined strictly to existing law, and that the doctrine should not be expanded, so as to brand as a wrongdoer one who, having no agreement express or implied with the patentee, sells to the public commodities needed in the ordinary affairs of life."

Very much the same views had been expressed in 1898 by Judge Lowell in his able discussion in Tubular Rivet & Stud Co. v. O'Brien et al. (C. C.) 93 Fed. 200. See, also, Edison Electric Light Co. v. Pen-

insular Light, Power & Heat Co. (C. C.) 95 Fed. 669, affirmed 101 Fed. 831, 43 C. C. A. 479, and Millner v. Schofield et al., 4 Hughes, 258, 17 Fed. Cas. 392.

The illustrations in the opinions of Judge Coxe and Judge Lowell were not fanciful. Just the kind of a situation to which they referred might have occurred in the case of a farmer who furnished potatoes to the infringer of the Robinson patent for a vegetable peeling machine described in Imperial Machine Co. v. Rees (D. C.) 261 Fed. 612, and Imperial Machine & Foundry Corp. v. American Machinery Co. (D. C.) 276 Fed. 436, and illustrations from actual experience might be multiplied. In the Cortelyou Case, supra, no reference is made to Thomson-Houston Electric Co. v. Kelsey Electric Ry. Spec. Co. (C. C.) 72 Fed. 1016, affirmed 75 Fed. 1005, 22 C. C. A. 1. In that case, no particular form of trolley stand was included in the invention, and Judge Wallace dissented, stating, inter alia:

"They are as much entitled to make and sell their trolley stands as they are to make and sells the rails, the poles, the wires, the screws, the paint, or any other article which may be required for use by those who own and operate electric railways in which the improvements covered by the patents of the complainant are utilized."

It is apparent that some confusion had arisen because the views of the courts were not wholly reconcilable, due, perhaps, to the fact that the question of the validity of restricted licenses was intertwined with that of contributory infringement.

3. The final phase is represented by Motion Picture Co. v. Universal Film Co., 243 U. S. 502, 37 Sup. Ct. 416, 61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959. In that case the Supreme Court discarded the so-called Button Fastener Case and its own decision in Henry v. Dick, 224 U. S. 1, 32 Sup. Ct. 364, 56 L. Ed. 645, and held, inter alia, that the law does not empower the patent owner by notices attached to the things patented to extend the scope of the patent monopoly by restraining their use to materials necessary for their operation, but forming no part of the patented invention.

The case recognized that, while there had been differing views in respect of the Button Fastener Case nevertheless that case had been widely accepted and had had a far-reaching commercial influence. By a complete reversal of what was held in the Button Fastener Case and in Henry v. Dick, and in view of the expression used in the opinion of the Supreme Court, it is plain that the court meant to assure the free sale and use of unpatented articles of trade and commerce, unless there was some other act than the mere sale or use which contributed to the tort of infringement.

If, in the case at bar, the owner of the paper cup known as the Lily cup were restrained from the mere act of selling the Lily cup to a person whom he knew owned an infringing vending machine in which the cup was to be used, then the owner of the patent would accomplish without an agreement more than the Supreme Court has said he could accomplish with a license agreement.

[2] In the last analysis, the fundamental thought is that, before one may be held for contributory infringement, it must be shown that

he had.knowingly done some act without which the infringement would not have occurred. Such an act may have no relation to furnishing the infringer with any article or material. It may, for instance, consist in assisting the infringer by active participation in the sale of the infringing device, or in inducing a person to use an infringing device, in order that the inducer may sell some article used in connection with the device. Thus, if a manufacturer of silk, in order to sell his commodity, prevailed upon a dealer to use the patented holder referred to in Armstrong v. Belding Bros. & Co., 297 Fed. 728 (C. C. A. 2d Circuit, February 4, 1924), such manufacturer would be a contributory infringer, or if designs were made by architects under the circumstances described in Risdon Iron & Locomotive Works v. Trent (C. C.) 92 Fed. 375, contributory infringement would follow.

Where, as here, however, any paper cup of proper size is available for the purposes of the infringing device, just as any gum or chocolate package of proper size is available for a slot machine, the mere sale or use of the paper cup, like the mere sale or use of the gum or chocolate package with the knowledge that the same was to be used in a patented machine, cannot charge the vendor of the cup or the vendor of the gum or chocolate with contributory infringement, and, finally, it would, indeed, place a heavy burden upon trade, and go far beyond the beneficial purposes of the patent monopoly, to hold that it was the duty of the vendor of an unpatented article of commerce to ascertain whether the article was, as held by the decree below, "adapted for use" in the infringing apparatus "under such circumstances as would lead a reasonable person to suppose that the purchasers meant to use" the article in the infringing apparatus. Such a duty would require vendors of the almost limitless ordinary articles of trade, whether in raw or manufactured form, to determine first whether the device was an infringement, and, secondly, to what use the lumber, steel, or what not was to be put by the purchaser. We conclude, therefore, that the injunction decree was too broad, and should be modified as set forth in the margin.[1]

_____

[1] Ordered, adjudged, and decreed that the plaintiff, the Individual Drinking Cup Company, is the owner of United States letters patent No. 1,081,508, in suit, granted to Lawrence W. Luellen December 16, 1913; that claims 16, 18, 26, 34, 41, 48, and 49 of said letters patent are good and valid in law, and that the defendant has infringed upon claims 18, 26, 34, 41, 48 and 49 by contributing to the use of cup-vending apparatus embodying the improvements described in said claims and like or similar to the cup-vending apparatus in evidence in this cause and marked Plaintiff's Exhibit No. 6; that neither claim 16 nor any valid claim of said patent, other than those specified, has been infringed by said cup-vending apparatus or by the defendant, and that Plaintiff's Exhibit No. 7, Defendant's Push Button Bracket, does not infringe any valid claim of the said patent in suit. It is further ordered, adjudged, and decreed that the injunction heretofore ordered to be issued out of and under the seal of this court be and the same is hereby made permanent, until the expiration of the patent in suit, to the extent of enjoining and restraining the defendant, his agents, attorneys, workmen, and employees, and all persons in privity with him and them, from directly or indirectly making or causing to be made, or constructed, using or causing to be used, selling or causing to be sold, in any manner, any apparatus or parts thereof containing or embodying the invention and improvements described and claimed in claims

[3] 4. Referring, now, to the question as to whether or not, on the evidence in this case, defendant Errett was guilty of contributory infringement, it is apparent from the facts that Errett induced Hudson River Day Line to use the infringing vending machine. This course was due in part to conscientious advice by counsel, who were of opinion that the apparatus patent was invalid, and not infringed. It is clear from the record that the inducement was due to the desire of Errett thus to obtain a customer for his Lily cups. It follows, therefore, that Errett was guilty of contributory infringement.

[4] 5. Plaintiff has moved to dismiss the appeal on the ground that the interlocutory decree was final and conclusive upon the question of contributory infringement, and attention is called to the statement in 250 Fed. 620, 162 C. C. A. 636, as follows:

"As defendant Errett did not appeal from the New York decree, we do not discuss the question of contributory infringement."

This statement was incorporated in the opinion because there was no necessity to discuss the question. Errett had not appealed from the interlocutory decree; non constat, he might not appeal from the final decree, and in such circumstances the question of contributory infringement was distinctly left open. Errett at that time had not contested contributory infringement, and both sets of litigants seemed to be wholly concerned with questions of validity and infringement, and, as pointed out supra, there was no discussion of contributory infringement in the briefs.

We have examined the authorities submitted by plaintiff, but they do not require detailed comment. It seems too plain for argument that an interlocutory decree cannot be res adjudicata between the same parties in respect of the same litigation, and yet that all questions are left open until final decree. Of course, a court usually follows in its final decree what has actually been decided and expressed in the interlocutory decree. If, to illustrate, between the time when the interlocutory decree is filed and the case comes up on final hearing, a decision of the Supreme Court demonstrated that the interlocutory decree was erroneous, we suppose no one would argue that the court was bound to reiterate its error in the final decree.

The motion to dismiss must therefore be denied, and the decree is modified, as indicated, without costs.

18, 26, 34, 41, 48, and 49 of United States letters patent No. 1,081,508, granted to Lawrence W. Luellen December 16, 1913, and from inducing others to use the infringing apparatus in any way whatsoever. It is further ordered, adjudged, and decreed that the plaintiff's exceptions (then follow with remainder of decree).