## PERFECT TAILBOARDS, PATENTED v. ADAM BLACK & SONS, Inc.

### No. 5902.

District Court, D. New Jersey.

Jan. 6, 1940.

Abraham Lieberman, of Union City, N. J. (Donald L. Brown, of New York City, of counsel), for plaintiff.

Benjamin E. Gordon, of Jersey City, N. J. (Samuel Milberg, of Jersey City, N. J., of counsel), for defendant.

FAKE, District Judge.

The patent in suit No. 1,695,609 was issued to Frank Richter on December 18, 1928. The application for it was filed June 27, 1927. It is now owned by the plaintiff. It contains four claims, of which claims 1, 2 and 4 are in suit. It has been before the District Court of the Eastern District of New York on four occasions. The first action was against the Schenck Auto Body Corporation where it was not defended and resulted in a default decree for the plaintiff. The second was against Colonial Body Corporation, the defense there being limited to noninfringement. The court sustained the patent and found it infringed. No opinions are reported in these two cases. The third was against Biltwell Auto Body Company reported in, D.C., 25 F.Supp. 930, wherein the validity of the patent was attacked on the ground of prior use. The proof was insufficient to establish the prior use and the court again sustained the validity of the patent on the proofs before it. The fourth case was against the National Bent Steel Corporation et al. reported in D.C., 27 F.Supp. 550. Here again, the patent was sustained against a defense of prior uses, including a prior use by the defendant in the instant case. In none of these cases did the Judge have before him

a state of facts such as has been presented here. The volume of evidence here is much greater and the issues are extended to a much wider field, as will hereinafter appear.

This Richter patent relates to improvements in tailboards or tailgates for trucks and the like. The gist of it, as spelled out from the claims and the specification, resides in a hinge for the fastening of the tailboard to the rear end of the truck floor whereby the space between the floor and the tailboard is filled up by the designed members of the hinge when the board is laid open in line with the floor of the truck, and when the tailboard is closed, the housing which covers the axle or hinge pin protrudes to the rearward of the tailboard serving as a bumper. In short, it is a combination of the idea displayed in the well-known piano hinge, in so far as the longitudinal continuity of the hinge with the members joined by it are concerned, and an adaptation of the idea of the old hand forged hinge members which in days gone by were annexed to barn doors and the tailboards of wagons. In which instances the butts of the hinges extended beyond the planes to which they were attached and operated as protrusions ready to meet anything which might collide with them. That they were capable of such a function was a mere coincidence in earlier days and did not reach to the heights of patentable invention.

Going back into the incidents preceding the filing of the application for this Richter patent, I am convinced beyond a reasonable doubt that one of the elements of the patent was worked out by Fred O. Black as an example of ordinary shop practice and not by the patentee. It appears from the evidence that Richter had produced a tailboard hinge some time prior to October, 1926 whereby the space between the tailboard and the floor of the truck was covered and made flush by the members of the hinge when the tailboard was extended in line with the floor of the truck and in the early part of January, 1927 he showed it to Black and to one, Hoffman, an employee of Black, for the purpose of having Black make another one like it. What Richter had at that time is shown on a diagram marked in evidence as Section A, Exhibit D-1. The contrivance thus shown required that the tailboard be of the same thickness as the rear floor member of the truck, and it offered no extension or protrusion to operate as a bumper when the tailboard was raised to its closed position. It was 2¼ inches in thickness, clumsy in appearance and carried much useless weight by reason of the unnecessary thickness of the tailboard itself. Black, with his helpers Hoffman and Mirkewicz, went to work on the new construction for Richter and of their own volition, noting the unnecessary thickness of the tailboard, set a tailboard in the hinge members 1¼ inches thick and placed a 1 inch filler behind the metallic hinge member to make up for the shortage or difference in the thickness of the tailpiece. When this was done, Black looked at it and said: "Gee, that looks terrible. It looks awful awkward; it is clumsy. Let's take this thing apart, pull out that filler piece." He then took a piece of chalk and made a rough drawing on the floor of the shop, and later on the wall in another part of the shop, showing the tailboard hinge member bent in to meet the thinner tailboard. This was done, as has been said, as a mere matter of routine shop practice, and in my opinion it was well within the skill reasonably expected in the art. On completion, lo, and behold! the butt or housing of the hinge pin protruded well out behind the tailboard of the truck, and there it stood in all its glory as a challenge ready to meet anything which might bump into it; a bumper! This finished job of the blacksmith is shown in Section B on Exhibit D-1. When Richter called to get the job he was greatly pleased and according to Black: "He says: 'Gee, now we got a bumper on the back.' I says, 'Certainly.'"

While the use of the word "Gee" as used the second time by Black may weaken it as an exact quotation from Richter, the intent of the witness to express Richter's surprise is not destroyed.

The testimony of Black indicating that he, and not Richter, first conceived the bumper idea is fully corroborated by the witnesses Hoffman and Mirkewicz, as will appear by an examination of their testimony. The bending in of the hinge member was not new, nor was the protrusion occasioned thereby a new result. The pivoted or butt ends of hinges have protruded time out of mind, as will be noted in looking at the butts of any hinged door when closed. Setting them in multiples to make them continuous as in piano hinges is of course old. The doubling of the

flanges of the hinge to form U-shaped members, thereby covering the open space when used on tailboards was not new as the examiner pointed out.

Moreover, the probabilities speak out emphatically as indicating that Black, the man skilled in the work of a blacksmith, would, with the eye of an expert, first notice what was required in the hinge to bring it down to meet a thinner tailboard. Richter had not devised it on his first construction. He had applied for a patent in October, 1926, months prior to the application in the instant case, wherein he sought to cover a tailboard mounting to provide a flush surface between the tailboard and the truck. The file wrapper discloses no extension of the hinge to function as a bumper. The application was rejected on "Dunham in view of Rachal and Vandasant." These patents are numbered respectively: No. 836,102, No. 908,327, and No. 1,530584, and fully sustain the position taken by the examiner. Here was Richter then, with his "clumsy" construction, in January of 1927, with a patent pending on it which was to be denied on February 4, 1927. In this interim between the middle of January and February 4th, the blacksmith had furnished his handiwork as above described. Then on June 27th next thereafter, Richter filed the amended application with which we are here concerned, seeking a patent on a hinge "constructed to extend outwardly beyond the end of the truck" and deposes in this connection that it was invented by him prior to the filing of his earlier application of October, 1926. That he invented it at that earlier date and said nothing about it either in his petition or in the accompanying drawings is more than passing strange. Certainly this neglect on his part until after the blacksmith worked on the problem, affords no strength to his contention that he invented it, and in view of the record here, which I do not deem it necessary further to enlarge upon, the conclusion must be reached that he did not.

For the foregoing reasons the patent is invalid on two grounds: First, for lack of patentable invention; and, second, because that which is asserted as patentable was Black's and not Richter's.

There are several other issues involved; one bearing upon infringement which is trivial, and another bearing upon the ownership of the patent. In view of the foregoing which disposes of the patent up-

on its merits, I do not deem it necessary to pass upon them.

A decree will be entered in conformity herewith.